UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RELINK US LLC, | § | No. 1:23-cv-1093-DAE |
| *Plaintiff,* | § | |
| | § |  |
| v. | § | |
| | § | |
| | § | |
| TESLA, INC., | § | |
| *Defendant.* | § | |

### ORDER (1) LIFTING STAY OF CASE; (2) GRANTING MOTION TO TRANSFER VENUE

Before the Court is Plaintiff Relink US LLC's ("Relink" or "Plaintiff") Motion to Lift the Stay, Open Discovery and Enter a Case Schedule in Light of Denial of IPR Institution, filed on August 13, 2024. (Dkt. # 65.) Defendant Tesla, Inc. ("Tesla" or "Defendant") filed a response in opposition on August 20, 2024. (Dkt. # 66.) Relink filed a reply on August 21, 2024. (Dkt. # 67.) Also before the Court is Tesla's Opposed Motion to Transfer Venue to the Northern District of California, filed prior to the issuance of the current stay on December 18, 2023. (Dkt. # 32.) On February 12, 2024, Relink filed a response in opposition. (Dkt. # 46.) On March 12, 2023, Tesla filed its reply. (Dkt. # 55.) On February 6, 2025, Relink filed supplemental authority in opposition to Tesla's motion to transfer venue. (Dkt. # 69.)

After careful consideration of the memoranda and exhibits in support and in opposition to the motion, the Court, for the reasons that follow, (1) **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion to Lift the Stay and Open Discovery (Dkt. # 65), and (2) **GRANTS** Defendant's Motion to Transfer Venue.  (Dkt. # 32.)

<u>BACKGROUND</u>

Relink accuses Tesla of allegedly infringing U.S. Patent No. 9,793,755, which is titled "Uninterruptible Power Supply and Method for Managing Power Flow in a Grid-Tied Photovoltaic System" (the "'755 Patent" or "Asserted Patent").  (Dkt. # 21 at 2–3.) Relink accuses Tesla of infringing "one or more claims of the '755 patent" by making, using, selling, offering to sell, and/or importing "home backup systems that include a Tesla Solar Inverter, including those of the Powerwall (fka Powerwall 2) and Powerwall+ systems" ("Accused Products").  (<u>Id.</u> at 3.)  Relink alleges that these products include a solar inverter, a bi-directional converter, and a controller that regulates a power flow of the solar inverter by adjusting the frequency of an alternating current voltage source ("Accused Features").  (<u>Id.</u> at 4; Dkt. # 21-2 (claim chart)).

Relink originally brought suit in the Western District of Texas ("WDTX") on September 1, 2023.  (Dkt. # 1.)  Tesla filed a Partial Motion to Dismiss on November 20, 2023.  (Dkt. # 10.)  On December 4, 2023, Relink filed

its Amended Complaint.  (Dkt. # 21.)  Tesla then filed a Motion to Transfer Venue to the Northern District of California ("NDCA") on December 18, 2023.  (Dkt. # 32.)  On March 1, 2024, Tesla thereafter filed a Motion to Stay *pending Inter Partes* Review proceedings.  (Dkt. # 51.)  On March 21, 2024, Judge Pitman issued an Order granting the motion to stay the case.  (Dkt. # 59.)

On August 13, 2024, the Parties filed a Third Joint Status Report informing the Court that the Patent Trial and Appeal Board ("PTAB") issued a decision denying institution of Tesla's petition IPR of U.S. Patent No. 9,793,755. (Dkt. # 64.)  After evaluating the PTAB's decision, Tesla determined not to file a request for rehearing or petition for Director level review.  (Id.)  As such, the Parties informed the Court that the IPR proceedings are concluded.  (Id.)

On the same day, Relink filed a Motion to Lift the Stay, Open Discovery and Enter a Case Schedule in Light of Denial of IPR Institution.  (Dkt. # 65.)  On August 20, 2024, Tesla filed a response in opposition to Relink's motion to lift the stay.  (Dkt. # 66.)  On August 21, 2024, Relink filed its reply.  (Dkt. # 67.)  On November 7, 2024, this case was transferred to the undersigned.  (Dkt. # 68.)  On February 6, 2025, Relink filed supplemental authority in opposition to Tesla's motion to transfer venue.  (Dkt. # 69.)  Thus, both motions are fully briefed and ripe for consideration.

LEGAL STANDARD

I.    Lift Stay

"A court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." Murata Mach. USA v. Daifuku Co., 830 F.3d 1357, 1361 (Fed. Cir. 2016). In determining whether to lift a stay, the Court considers the following factors: (1) whether a stay will simplify the issues raised; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; and (3) the status of the litigation at the time the stay is requested. Pers. Audio LLC v. Micron, Inc., 230 F. Supp. 3d 623, 626 (E.D. Tex. 2017); see also Crossroads Sys. v. DOT Hill Sys. Corp., No. A-13-CA-1025, 2015 WL 3773014, at *2 (W.D. Tex. Jun. 16, 2015).

II.    Venue Transfer

28 U.S.C. Section 1404(a) "allows a district court to transfer any civil action to any other district or division where it might have been brought when the convenience of parties and witnesses and the interest of justice so require." In re TikTok, Inc., 85 F.4th 352, 357 (5th Cir. 2023) (quoting Bechuck v. Home Depot U.S.A., Inc., 814 F.3d 287, 293 (5th Cir. 2016)) (internal quotation marks omitted). A court may grant transfer under Section 1404(a) only if the moving party "clearly establishes good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." In re Clarke, 94

4

F.4th 502, 508 (5th Cir. 2024) (quoting <u>Def. Distributed v. Bruck</u>, 30 F.4th 414,

433 (5th Cir. 2022)).  The moving party bears the burden to establish good cause.

<u>Id.</u>

   To establish good cause, the moving party must clearly demonstrate

that its chosen venue is clearly more convenient, not just that it "is more likely than

not to be more convenient."  <u>Id.</u>  A preponderance of the evidence is not enough.

<u>Def. Distributed</u>, 30 F.4th at 433.  "[T]he fact that litigating would be more

convenient for the defendant elsewhere" is not alone enough to justify a transfer.

<u>Id.</u>

<u>DISCUSSION</u>

   As a threshold matter, Tesla does not oppose Relink's first request

(i.e., lifting the stay) because the present stay was based on Tesla's IPR, which is

now resolved.  (Dkt. # 66 at 8.)  Instead, Tesla opposes Relink's motion to enter a

schedule that "opens discovery immediately and sets highly accelerated deadlines

because the proposal all but guarantees the parties will expend significant

resources on duplicative proceedings prior to the Court's ruling on Tesla's Motion

to Transfer Venue."  (<u>Id.</u>)

   Because the parties are not opposed to lifting the stay, the Court

**GRANTS IN PART** Relink's motion to lift stay (Dkt. # 66.)  However, the Court

declines to address Relink's request to open discovery and enter a case schedule as

5

it contemporaneously addresses Tesla's motion to transfer venue (Dkt. # 32) in this Order. The Court now turns to the merits of Tesla's motion to transfer venue to the Northen District of California ("NDCA").

I.    Personal Jurisdiction Over Plaintiff

In opposition to the motion to transfer, Relink first argues that transfer to NDCA would violate the Constitution because NDCA does not have personal jurisdiction over Relink. (Dkt. # 46 at 8.) Although Relink is the Plaintiff in this case, Relink contends the personal jurisdiction protections of the Due Process Clause apply equally to plaintiffs and defendants. (Id.)

Applying Fifth Circuit law, the Federal Circuit has previously determined that "[t]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009). Relink argues that "[w]hile § 1404(a) may not prohibit transfer of Relink to N.D. Cal., the Constitution does." (Dkt. # 46 at 9.)

The Court concludes that Relink's personal jurisdiction argument does not preclude a determination that this case should be transferred. Indeed, as the plaintiff argued in Genentech, a transfer could result in plaintiff needing to contest

personal jurisdiction in the transferor court, which may be "a waste of judicial resources", but nonetheless does not completely preclude transfer.  Genentech, Inc., 566 F.3d at 1341.

## II.    The Case Could Have Been Brought in the Northern District of California

"The threshold inquiry when determining eligibility for transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed,' or whether all parties consent to a particular jurisdiction."  Savage v. Detroit Indep. Sch. Dist., No. 4:22-CV-00202, 2023 WL 3981266, at *2 (E.D. Tex. June 13, 2023) (quoting In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I")).  The parties do not dispute that this case could have been brought in either the Western District of Texas or the Northern District of California.

## III.    Private and Public Interest Factors

To establish good cause and justify a transfer, the moving party must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious…that those marginal gains will *actually* materialize in the transferee venue."  Clarke, 94 F.4th at 508 (emphasis in original).  In assessing whether the moving party has met this burden, the court considers four private-interest factors and four public-interest factors.  TikTok, 85 F.4th at 358.  No single factor is dispositive, and the Fifth Circuit has "cautioned against a raw

counting of the factors that weighs each the same." Clarke, 94 F.4th at 508

(quoting TikTok, 85 F.4th at 358) (internal quotation marks omitted). When the

moving party fails to make a clear demonstration on a factor, the district court

"cannot weigh [that] factor against the non-movant and in favor of transfer." Id.

(quoting Def. Distributed, 30 F.4th at 434).

A.    Private-Interest Factors

The private-interest factors are: "(1) the relative ease of access to

sources of proof; (2) the availability of compulsory process to secure the

attendance of witnesses, (3) the cost of attendance for willing witnesses; and (4) all

other practical problems that make trial of a case easy, expeditious and

inexpensive." In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) (en

banc) ("Volkswagen II")) (cleaned up).

1.    Relative Ease of Access to Sources of Proof

"The first factor focuses on the location of documents and physical

evidence relating to the case." TikTok, 85 F.4th at 358 (quoting Volkswagen II,

545 F.3d at 316) (internal quotation marks omitted). "The question is relative ease

of access, not absolute ease of access." In re Radmax, Ltd., 720 F.3d 285, 288 (5th

Cir. 2013) (per curiam). If the current district does not have evidence relating to a

case, this factor favors transfer. TikTok, 85 F.4th at 358 (citing Volkswagen II, 545

F.3d at 316). The availability of evidence electronically minimizes the weight of

this factor on the transfer analysis.  Id. at 358–59 (citing In re Planned Parenthood Fed'n Am., Inc., 52 F.4th 625, 630 (5th Cir. 2022)).

In "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."  In re Nintendo, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (citing In re Genentech, Inc., 566 F.3d at 1345).  "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  In re Apple Inc., 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing In re Genentech, 566 F.3d at 1345).

Tesla alleges that the engineers that designed and developed the Accused Features are located in NDCA.  (Dkt. # 32 at 9.)  In addition, the Documents and active source code concerning the Accused Features' development and operation are similarly created and maintained by Tesla's Palo Alto-based engineers and the ██████████████████████████████████ ████████████████████████████████  (Id. at 9–10.)  Further, the Accused Products were ███████████████████████████████ ██ located in Palo Alto.  (Id. at 15.)

Relink contends that its own documents concerning the '755 patent, Garrity Power Services's documents concerning the development of the technology, and Relink Limited's documents concerning attempts to commercialize the technology in Europe are kept by Mr. Garrity in Rockwall, Texas.  (Dkt. # 46 at

10.)  In addition, Relink contends that Tesla documents concerning the work of former relevant employees, such as Tyler Moragne who was the Director & Head of Residential Energy at Tesla, were necessarily created in Austin during his employment there.  (Id. at 11.)  Relink also contests the location of Tesla's servers in the NDCA as Daniel Oler—whose declaration is relied upon by Tesla—██████

████████████████████████████████████

████████████  (Dkt. # 46 at 11.)  Tesla responds that a 30(b)(6) witness confirmed the servers' NDCA location.  (Dkt. # 55-2 at 6.)

The Court finds Tesla has made a sufficient showing that any physical evidence in this case will be in NDCA.  And even for the electronically stored documents, the custodians of those documents are in NDCA.  (Id.; Honeywell Int'l Inc. v. Zebra Techs. Corp., 2022 WL 2161058, at *8 (W.D. Tex. June 15, 2022) ("The Federal Circuit has time and again reminded this Court to look where the custodians of relevant electronic documentation is, as they may bear on the relative ease of access to sources of proof."))  Accordingly, the relative ease of access to sources of proof supports transfer.

    2.    Availability of Compulsory Process to Secure Witness
           Attendance

"The second factor focuses on the availability of compulsory process to secure the attendance of witnesses."  TikTok, 85 F.4th at 360 (quoting Volkswagen II, 545 F.3d at 315) (internal quotation marks omitted.)  This factor

favors transfer when the current district does not have subpoena power over non-party witnesses but the proposed venue does "enjoy absolute subpoena power for both depositions and trial." Id. (quoting Volkswagen II, 545 F.3d at 316). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." Id. (quoting Planned Parenthood, 52 F.4th at 630–31 (internal quotation marks omitted)).

Tesla claims most relevant non-party witnesses would be associated with prior art. These non-party witnesses, including engineers and suppliers, developed earlier products and patents that are relevant to the Asserted Patents. (Dkt. # 32 at 16.) Tesla identified that party and non-party witnesses, including former employees, associated with the design and development of Solarcity DemandLogic are likely to be relevant witnesses. (Id.) Relink responds that SolarCity is not a third-party because, as Tesla admits, it acquired SolarCity long ago and merged it into Tesla. (Dkt. # 46 at 15.)

Relink argues there are "numerous third-party witnesses in this District that are knowledgeable about issues highly relevant to Tesla's liability for its infringement of Relink's patent (e.g., operation of the infringing products) and damages (e.g., sales, marketing, and value of the infringing technology)." (Id. at 13.) Relink identified Tyler Moragne is a former Tesla employee based in Austin who possesses highly relevant information regarding the sales and marketing of

11

infringing Powerwall systems as well as the operation of these accused products. (Id.)  Next, Relink identified Sandeep Narla, who is a former Tesla employee living in Austin who possesses highly relevant information regarding the design and architecture of infringing Powerwall products, as well as Tesla's knowledge of the patent-in-suit during that design.  (Id. at 14.)

Third, Relink claims there are several other former Tesla employees in Austin with knowledge of the sales and the marketing of the infringing products including Matt Haley and Tony Morien.  (Id.)  Fourth, Relink contends there will be relevant witnesses at the Electric Reliability Council of Texas ("ERCOT") as Tesla contracted with ERCOT to create Virtual Power Plants ("VPP") in Texas where Powerwall customers are paid to send surplus energy back to Texas's power-grid to increase reliability of the system.  (Id.)  Finally, Relink claims VIKTA Energy, which is located in Austin, "is a trusted Tesla partner that specializes in architecting, selling and installing" the infringing Powerwall products.  (Id.)

Tesla replies that former general sales employees Tony Morien, Matt Haley, and engineer Sandeep Narla (who was in NDCA) left the company approximately 4.5-5 years before this case.  (Dkt. # 55-2 at 7.)  As such, Tesla's current employees have far more up-to-date knowledge on the Accused Products. (Id.)  Moreover, Tesla contends its interaction with ERCOT relates to the VPP

program, which is not directly related to Relink's patent, is offered in several markets (including California), and has no unique tie to WDTX.  (Id.)

This Court could compel Tesla's former employees who reside in Texas as identified by Relink.  NDCA can compel Tesla's Palo Alto employees (discussed below) and Solarcity DemandLogic witnesses in the position to testify regarding prior art.  However, neither court will be able to compel Aaron Jungreis, co-inventor of the '755 Patent who is located in Israel.  As a result, the Court finds this factor is neutral but leaning toward transfer given the numerosity of Tesla's potential witnesses in NDCA, as discussed below.

        3.    <u>Cost of Attendance for Willing Witnesses</u>

Testifying imposes external costs on witnesses, even those willing to testify.  "It is more convenient for witnesses to testify at home…."  <u>TikTok</u>, 85 F.4th at 361.  "[A]dditional distance means additional travel time . . . meal and lodging expenses," additional time "witnesses must be away from their regular employment," and increased "personal costs associated with being away from work, family, and community."  <u>Id.</u>  This factor "attempts to internalize and minimize" these costs by "favoring the venue that is more convenient from the perspective of willing witnesses."  <u>Clarke</u>, 94 F.4th at 515 (citing <u>TikTok</u>, 85 F.4th at 361; <u>Volkswagen II</u>, 545 F.3d at 317).

The Fifth Circuit has adopted distance as the metric for convenience. Id.  The factor of inconvenience "positively and linearly scales" with the distance over one hundred miles witnesses must travel to testify.  Id. (citing TikTok, 85 F.4th at 361–62 & nn. 8–9).

Relink argues that transfer would be inconvenient for Paul Garrity, a named inventor of the '755 patent and the managing member of Relink. Mr. Garrity lives less than 100 miles from this District and more than 1,700 miles from NDCA.  (Dkt. # 46 at 16.)  Relink contends Tesla also has relevant engineering witnesses in this District, including Robbie Buck, who in turn "interfaces with other relevant Austin-based Tesla employees with respect to the Powerwall products including Adam Lydecker (a mechanical design engineer) and Akshay Bharadwaj (a program manager) who manages bills of materials, which are documents relevant to infringement and damages."  (Id. at 16–17.)  Relink also points to Keyur Javiya, a Tesla engineer in Auston, Aril Haas, an Energy Asset Manager, and Jason Choi, who is the North American Head of Field Operations. (Id. at 17.)

On the other hand, Tesla identified Daniel Oler part of a team of software engineers responsible for aspects of ███████████████ for the Accused Products, including Powerwall and Powerwall+.  (Dkt. # 32-1 at 3.)  Mr. Oler pointed to others on teams responsible for implementing Accused Features

who specifically work at Tesla's Palo Alto office and reside in NDCA.  (Id. at 3–5; Dkt. # 32 at 12.)  The identified potential witnesses that would have knowledge relevant to the issues surrounding the Accused Products and that are located in NDCA include: ████████████████████████████████████████

████████████████████████████████. (Dkt. # 32-1 at 3–5.)

Each of these identified employees are engineers or scientists that worked on the research, development, or design of relevant aspects of the Accused Products relating to Relink's allegations.  Mr. Oler also identified ████████████

████████████████████████ (Id. at 4.)  Mr. Oler further noted that he is not aware of any Tesla engineers dedicated to the research, development, or design of relevant aspects of the Accused Products who are based in Texas.  (Id. at 5.)  This was not rebutted by Relink.  (Dkt. # 55-2 at 5.)

Thus, according to Tesla, the individuals most likely to provide testimony concerning Accused Features reside in NDCA.  (Dkt. # 32 at 12.)  Tesla argues there are no known witnesses in WDTX, and any inconvenience to Mr. Garrity to travel to NDCA is significantly outweighed by the convenience of Tesla's witnesses in NDCA.  (Id. at 14.)  Tesla further contends that the record demonstrates each identified witness by Relink has minimal, if any, connection to this case.  (Dkt. # 55-2 at 5.)  Indeed, Mr. Buck testified ████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

████████ (Dkt. # 43-4, 33:2-34:7.)  Tesla claims █████████████████████

██████████████████████████. (Dkt. # 55-2 at 5.)

The Court finds Relink has not refuted Tesla's assertions that the witnesses relevant to this litigation reside in NDCA other than claiming that "many of these witnesses are entirely redundant of each other as the job descriptions." (Dkt. # 46 at 17.)  The Court recognizes Relink does identify this District as more convenient for one of the patent inventors, Mr. Garrity who resides in Rockwell, Texas.  (Dkt. # 46 at 16.)  But the other patent inventor, Aaron Jungreis, is located in Israel.  (Dkt. # 32 at 16.)  Moreover, the seven Texas witnesses—that arguably do not have as much knowledge regarding the research, development, or design of relevant aspects of the Accused Products—do not outweigh California witnesses Tesla has identified here.  TikTok, 85 F.4th at 361 ("The presence of one Texas witness cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas.").

"[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."  In re Google LLC, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 17, 2021).  The Court concludes this factor favors transfer.

4.    <u>All Other Practical Problems</u>

"The fourth factor considers all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>TikTok</u>, 85 F.4th at 362 (quoting <u>Volkswagen II</u>, 545 F.3d at 315) (internal quotation marks omitted).  A court should not consider "garden-variety delay associated with transfer." <u>Radmax</u>, 720 F.3d at 289.  But if petitioners "inexcusably delayed" bringing their motion until "late in the litigation," this factor weighs against transfer. <u>TikTok</u>, 85 F.4th at 362 (quoting <u>Planned Parenthood</u>, 52 F.4th at 631).  "Additionally, a hypothetical question about whether the transferee forum would have personal jurisdiction over a party cannot, by itself, justify a conclusion that this factor weighs against transfer." <u>Id.</u> (citing <u>Def. Distributed</u>, 30 F.4th at 435–36).  However, the parties do not dispute that this factor is neutral.

B.    <u>Public-Interest Factors</u>

The public interest factors are: "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws … [or] the application of foreign law." <u>Clarke</u>, 94 F.4th at 509 (quoting <u>TikTok</u>, 85 F.4th at 358).

1.    Court Congestion

A Section 1404(a) transfer cannot be granted solely based on court congestion.  Clarke, 94 F.4th at 515.  A court's assessment of another's docket is inherently speculative and to transfer for this sole reason "ignores the plaintiffs' role as master of the complaint."  Id.; see also Planned Parenthood, 52 F.4th at 631 (acknowledging holdings characterizing court congestion as a speculative factor). "[M]easuring [docket] congestion is easier said than done."  Clarke, 94 F.4th at 515.  While the transferor court may be able to estimate the efficiency of its own docket, its assessment of a transferee's docket is "at its core. . . an uninformed guess."  Id.

The Court declines to make any speculations about the docket of the Northern District of California compared to its own docket.  Therefore, this factor is neutral.

2.    Local Interests

The local interests factor considers "the local interest in having localized interests decided at home."  Volkswagen II, 545 F.3d at 315.  A court looks to "the significant connections between a particular venue and the events that gave rise to a suit," not to "the parties' [] connections to each forum."  TikTok, 85 F.4th at 364 (quoting Def. Distrib., 30 F.4th at 435 (internal quotation marks

omitted)).  Put simply, "[w]e focus on the events—not the parties."  Clarke, 94

F.4th at 512.

"[T]he place of the alleged wrong is one of the most important factors

in venue determinations."  TikTok, 85 F.4th at 364 (quoting Def. Distrib., 30 F.4th

at 435.)  "[T]his factor weighs heavily in favor of transfer [when] . . . there is no

relevant factual connection to the [transferor district]."  Volkswagen, 545 F.3d at

317–18.  And this factor weighs against transfer when the "citizens of [the

transferor district] have a greater stake in the litigation than the citizens of [the

transferee district]."  TikTok, 85 F.4th at 364 (quoting Planned Parenthood, 52

F.4th at 632)).

When weight the local-interest factor, a court should consider the

"events that gave rise to the suit" and "the interest of non-party citizens in

adjudicating the case."  Clarke, 94 F.4th at 511 (quoting TikTok, 85 F.4th at 364

(cleaned up).  And again, transfer is decided "based on the situation which existed

when the suit was instituted.  In re EMC, 501 F. App'x at 975–76 (quote omitted).

A court may consider "the location of the injury, witnesses, and the [p]laintiff's

residence," but these proxies for local interests "can never subsume the ultimate

inquiry."  Id. (quoting Def. Distributed, 30 F.4th at 435).

Relink argues there is a local interest in the adjudication of a case

concerning an invention developed by a Texas-based inventor residing a short

distance outside the District.  (Dkt. # 46 at 19.)  Moreover, Relink claims there is

certainly a local interest in adjudicating the rights of a Texas-based company.  (Id.)

However, this factor is not concerned with the interest of a party, but rather it is the

interest of non-party citizens in adjudicating the case.

      It is true that Tesla has its corporate headquarters to Austin.  (Dkt.

# 32 at 6.)  And in its supplemental authority, Relink informs the Court that as of

June 13, 2024, Tesla had reincorporated in Texas with its headquarters already

having been in Austin for several years.  (Dkt. # 69 at 2.)  Nonetheless, transfer is

decided based on Tesla's situation which existed when the suit was instituted, not

as it stands now.

      Here, the Accused Products were ███████████████████

████████████████████████████████  which is the location of

Tesla's engineering headquarters.  (Dkt. #32 at 18.)  The relevant witnesses,

including third-party witnesses, live and work in NDCA.  (Id.)  And the

engineering teams and records on these Accused Products are in NDCA.  (Id.)

None of the events giving rise to this suit happened in WDTX.  Therefore, this

factor supports transfer.

      **3.**    <u>Familiarity with Governing Law</u>

      A court also considers its "familiarity with the law that will govern the

case."  <u>Volkswagen</u>, 545 F.3d at 315.  Familiarity with governing law weighs most

heavily when "the [transferee] venue is in a different State [than the transferor court]—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis." Planned Parenthood, 52 F.4th at 632 n.5. For this factor, a district court examines the law it will have to apply in the case, including whether it "would be bound to [the transferee court's] law concerning such claims." Def. Distrib., 30 F.4th at 436.

"This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" Tiktok, 85 F.4th at 365 (quoting Radmax, 720 F.3d at 289.)) The Fifth Circuit has "hesitated to find that this factor weighs in favor of transfer when there are no 'exceptionally arcane features of Texas . . . law that are likely to defy comprehension by a federal judge sitting in [California].'" Id. (quoting Def. Distrib., 30 F.4th at 436 (cleaned up.))

Here, familiarity with governing law is not in dispute. Either District is equally capable of applying federal patent law. Therefore, this factor is neutral.

4. Avoiding Conflict of Law and Foreign Law Problems

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" Def. Distributed, 30 F.4th at 436 (quoting Volkswagen II, 545 F.3d at 315). Once more, this factor is neutral. A transfer to the Northern District of California would not resolve any problems with the application of foreign law or avoid an issue with conflict of laws. Savage

21

v. Detroit Indep. Sch. Dist., No. 4:22-CV-00202, 2023 WL 3981266, at *4 (E.D. Tex. June 13, 2023).  This factor is neutral.

IV.    The Weight of the Factors Favors Transfer to NDCA

No single factor is dispositive, and the Court does not count the factors so that each weighs the same.  Clarke, 94 F.4th at 509.  To establish good cause and justify a transfer, the moving party must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious . . .that those marginal gains will *actually* materialize in the transferee venue."  Id. at 508 (emphasis in original).

The Court finds that Tesla has clearly shown that a transfer to NDCA will realize a gain in convenience.  Transfer will decrease the cost of attendance for witnesses.  The parties and non-party witnesses involved were not and overwhelmingly are not in Texas.  The community impacted by the events giving rise to this suit are in NDCA.  And no factor weighs against transfer.  While this case can properly be brought in WDTX, Tesla has established it is clearly more convenient based on the private and public factors for this case to be litigated in NDCA.  The Court finds the weight of the factors supports transfer.

CONCLUSION

For these reasons, the **Court GRANTS IN PART and DENIES IN PART** Relink's Motion to Lift Stay, Open Discovery, and Enter a Case Schedule

(Dkt. # 66), and **GRANTS** Defendant's Motion to Transfer.  (Dkt. # 32.)  It is

therefore **ORDERED** that this case is **TRANSFERRED** to the Northern District

of California.  The Clerk is directed to hold the case for five (5) days prior to the

transfer.

            **IT IS SO ORDERED.**

            **DATED:** April 3, 2025.

            _____

            David Alan Ezra
            Senior United States District Judge